UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| HERMAN THOMAS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:07 CV 315 |
|  | ) |  |
| KENNETH OWENS and | ) |  |
| THOMAS GOODLOW, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

*Pro se* plaintiff Herman Thomas filed suit against defendants Kenneth Owens and Thomas Goodlow under 42 U.S.C. § 1983. (DE # 1.) Defendants have moved for summary judgment (DE # 24), plaintiff has responded (DE # 26), and defendants have replied (DE # 27). For the reasons explained below, defendants' motion for summary judgment will be granted.

## I. BACKGROUND

*A. Parties*

Plaintiff is a 72-year-old prisoner, currently incarcerated by the Indiana Department of Correction at its New Castle Correctional Facility in New Castle, Indiana. (DE # 22.) Defendant Owens works as a corrections counselor and defendant Goodlow serves as a correctional captain at the Miami Correctional Facility (MCF), where plaintiff was housed in the summer of 2006. (DE # 25 at 2-3.)

*B. Factual Allegations*

In the summer and spring of 2006, plaintiff shared a prison cell at MCF with another inmate named Michael Hunt. (DE # 25-3 at 1.) At some point that summer, plaintiff asked both defendants to move him out of the cell with Hunt. (DE # 1 at 3.) Plaintiff contends that he "pleaded" with defendants to "move me out of harm's way because of the threat Hunt was to me." (DE # 26-2 at 1.) He also alleges that Hunt was a "dangerous offender whose history of violence was a matter of record known to both" defendants. (*Id.*)

Defendants describe plaintiff's request somewhat differently, with Goodlow claiming that he "became aware that [plaintiff] was not happy being celled with" Hunt (DE # 25-2 at 1), and Owens stating that he "became aware that [plaintiff] was asking for a new cellmate" (DE # 25-3 at 1). Both defendants contend that they did not believe plaintiff was "in particular danger from" Hunt (DE # 25-2 at 2; DE # 25-3 at 1), and Owens notes that plaintiff had lived with Hunt for six months without any reported incidents (DE # 25-3 at 3). Neither party has submitted any evidence showing that defendants did anything about plaintiff's requests.

Then, on August 3, 2006, plaintiff was attacked by Hunt in his cell. (DE # 1-3 at 5.) Plaintiff suffered significant injuries, including broken bones and facial lacerations, and injuries to his lower leg. (DE # 26 at 5-12.) According to plaintiff, Hunt became enraged when prison staff asked him to get toilet paper for plaintiff. (*Id.* at 13.) Although plaintiff doesn't make any allegation about fighting back, a prison official

2

responding to the incident noted that both inmates were "bleeding from their faces." (*Id.* at 14.) When prison officials arrived, they separated and handcuffed the men and eventually took plaintiff to receive medical attention. (*Id.*)

*C. Legal Background*

Plaintiff filed suit against defendants on July 11, 2007, alleging that they had violated his civil rights by failing to protect him from Hunt. (DE # 1.)

Defendants have now moved for summary judgment, arguing that there are no facts in the record that show they should have been aware of a substantial risk of serious harm to plaintiff, and that, even if there were, plaintiff has not shown that they believed he faced a serious risk. (DE # 25.) In his response, plaintiff asserts that both defendants had the power to move him from his cell if they wished to, and that he was arbitrarily moved into a cell with Hunt, apparently to act as a "calming influence"" on Hunt. (DE # 26 at 1-2.) He also states that Hunt had a history of "violent behavior and disruptive actions against others" that defendants were aware of. (*Id.* at 2.) Defendants' reply argues that plaintiff has failed to provide evidence showing that defendants knew that plaintiff faced a substantial risk of serious harm if he remained celled with Hunt. (DE # 27 at 1-4.)

**II. STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

3

a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).

Once the moving party has met its burden, the nonmovant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008) (citation omitted). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). Furthermore, when considering a motion for summary judgment, the court views the record and all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

Finally, the court notes that it must liberally construe *pro se* pleadings, *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006), like plaintiff's complaint and his response to defendants' motion for summary judgment.

**III. ANALYSIS**

Plaintiff brings his claim under 42 U.S.C. § 1983, which allows a party to file suit against a person who deprived him of a federal right while acting under color of state law. *Anderson v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). In this case, plaintiff alleges that defendants failed to protect him from Hunt, in violation of his Eighth Amendment right to protection from cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see* U.S. CONST. amend. VIII.

As prison officials, defendants had a responsibility to protect plaintiff "from violence at the hands of other inmates." *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). But officials do not violate the Eighth Amendment if they fail to prevent any and all injuries. *Id.* To present a failure to protect claim, plaintiff needs to show that (1) "he [was] incarcerated under conditions posing a substantial risk of serious harm," and (2) defendants reacted to that risk with "deliberate indifference." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). The first prong requires plaintiff to show "not only that he . . . experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur." *Id.* at 910. The second prong requires that plaintiff show defendants knew of and disregarded a substantial risk of serious harm. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). As the Supreme Court has summarized it, plaintiff must show that defendants knew of and disregarded "an excessive risk to inmate health or safety" and were both "aware of

5

facts from which the inference could be drawn that a substantial risk of serious harm" existed and drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[1]

Defendants only appear to contest the second prong of the test—whether they knew of and disregarded a substantial risk of serious harm. Specifically, in their motion for summary judgment, they argue that there is "nothing about the plaintiff's complaints that would permit an inference that [he] faced a substantial risk of harm, or that the harm he faced was serious." (DE # 25 at 10.) Thus, this motion comes down to whether there is enough evidence to raise an issue of material fact that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed. *Farmer*, 511 U.S. at 837.

Plaintiff fails to respond directly to defendants' argument, but did attach an affidavit to his response brief stating that he "pleaded with both of the defendants prior to the attack made against me . . . to move me out of harm's way because of the threat Hunt was to me."[2] (DE # 26-2 at 1.) He also alleges that Hunt is a "dangerous offender whose history of violence was a matter of record known to both" defendants. (*Id.*)

---

[1] Of course, direct evidence of defendants' state of mind is not required to show that they drew the inference that plaintiff was at serious risk of substantial harm. *See, e.g., Proffit v. Ridgway*, 279 F.3d 503, 506 (7th Cir. 2002).

[2] The manner in which plaintiff structured his response brief and attached his affidavit violates this court's LOCAL RULE 56.1(a), and thus, under normal circumstances, this court would disregard the contentions in his affidavit, *see* LOCAL RULE 56.1(b). Keeping in mind its duty to generously construe the submissions of *pro se* litigants, however, the court will not do so.

The claims in this affidavit are the most specific that plaintiff has made regarding what he told defendants about the threat from Hunt. In his complaint, he only states that "sent several verbal and written requests to be moved from his original bed/cell assignment." (DE # 1 at 3.) He has failed to submit copies of those "written requests" as evidence, and has never described exactly what he said in his "verbal requests."

Defendants do not help clarify the substance of plaintiff's requests to switch cells and his complaints about Hunt. Instead, they state in their affidavits that they "became aware" plaintiff "was not happy being celled with" Hunt (DE # 25-2 at 1), or that plaintiff "was asking for a new cellmate" and that he "complained about not getting along with" Hunt (DE # 25-3 at 1). Defendant Goodlow alleges that plaintiff's "complaints were of a routine, non-emergency nature and did not cause me to believe that he was in particular danger" and that he "was not aware of any other fact" that indicate that plaintiff was in danger. (DE # 25-2 at 2.) Defendant Owens repeats this contention. (DE # 25-3 at 2.)

The court determines the affidavits defendants have submitted in support of their motion, despite a lack of specifics, satisfy their "initial responsibility" to put forth evidence showing a lack of a genuine issue of material fact regarding whether they knew that plaintiff faced a substantial risk of serious harm. *See Celotex*, 477 U.S. at 323. Defendant Goodlow states that plaintiff's complaints were "of a routine, non-emergency nature," that they knew of no additional facts showing that plaintiff was in danger, and both defendants note that plaintiff and Hunt had "been living together for

7

over six months" without incident. (DE # 25-2; DE # 25-3.) This evidence establishes that defendants were not aware of facts showing that there was a substantial risk of serious harm to plaintiff. *See Farmer*, 511 U.S. at 837.

Thus, the question is whether plaintiff can "come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask-Morton*, 534 F.3d at 677. Purely based on the allegations in his complaint, the answer is no. There, plaintiff just alleged that he "sent several verbal and written requests to be moved." (DE # 1 at 3.) But plaintiff makes somewhat more concrete allegations in his affidavit, namely that he "pleaded" to be moved because of "the threat" Hunt was to him. (DE # 26-2 at 2.) This allegation heightens the tone of plaintiff's communications with defendants—from "requests" to "pleaded"—and provides the reason why he wanted to be moved—because Hunt was a "threat." But his failure to provide more specifics leaves the court with a host of unanswered questions: When did plaintiff complain to defendants? How many times? What were the substance of those complaints? Why exactly did plaintiff wish to be moved? Did Hunt do or say anything in particular that frightened or concerned plaintiff? If so, did he communicate those events to defendants? Presumably plaintiff could answer, or at least try to answer, these questions. But he has not, instead making only a short, vague statement. *See Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (as the vagueness of a threat increases, the likelihood of "actual knowledge of impending harm" decreases). Given the vagaries of plaintiff's contentions, the court concludes that "a reasonable jury" could not return a

8

verdict in his favor, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986), even when viewing the evidence in a light most favorable to him.

Case law supports this conclusion. In *Dale v. Poston*, 548 F.3d 563 (7th Cir. 2008), the plaintiff was somewhat more specific than in the instant case, telling prison officials that unnamed other inmates were "pressuring" him and "asking questions;" plus, it was commonly known that he had testified against another inmate. *Id.* at 566. The court held that this was insufficient to show that the officials were aware of facts from which they should have inferred that the plaintiff was at substantial risk of serious harm. *Id.* at 569. Here, plaintiff does claim he specified Hunt as a "threat," unlike the plaintiff in *Dale* who never identified his tormentors, but plaintiff never explains why he believed Hunt was a threat. (*See* DE # 26-2 at 1.) And *Dale* appears to be a stronger case in other ways, as that plaintiff had reason to be afraid of other inmates and he gave prison officials some description of the threatening behavior. *See Dale,* 548 F.3d at 566.

Two other cases offer similar comparisons. In *Grieverson v. Anderson*, 538 F.3d 763 (7th Cir. 2008), the plaintiff only told prison officials that he "was afraid and that he wanted to be moved." *Id.* at 776. Despite the plaintiff in *Grieverson* being assaulted repeatedly, the court held that there was no evidence that the defendant prison officials knew about the threats to his safety. *Id.* at 777. Finally, in *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002), the plaintiff told the defendant officials that he "was having problems in the block," that he "was scared," and that he needed to be "removed." *Id.* at 606. This communication was not sufficient to give the defendants notice "of a specific risk of

9

serious harm" such that they could be found deliberately indifferent for failing to take preventative action. *Id.* at 606-07.

The court believes that the facts in *Grieverson* and *Butera* closely compare to those alleged by plaintiff. While plaintiff's complaints identified his cellmate as the source of the threat (DE # 26-2 at 1), there is no evidence plaintiff ever told defendants why he believed Hunt was a threat to him. Thus, his complaints resemble those made by the plaintiff in *Grieverson*, who also failed to specify why he was afraid. *See Grieverson*, 538 F.3d at 776. Further, plaintiff's unspecific allegations about Hunt resemble the vague complaints that were found insufficient in *Butera*. *See Butera*, 285 F.3d at 606 (plaintiff complained that he "was having problems" and was "scared").

Admittedly, plaintiff did allege that defendants knew Hunt was a "dangerous offender" with a "history of violence." (DE # 26-2 at 1.) However, this statement is almost certainly inadmissible, as plaintiff cannot attest to defendants' personal knowledge about Hunt's background, and his own understanding of Hunt's "history of violence" was almost certainly derived through hearsay. Furthermore, even if it were admissible this allegation proves little. As the Seventh Circuit has explained, "prisons are inherently dangerous places and are inhabited by violent people, but that does not mean that all persons housed in a federal penitentiary, even one filled with the most dangerous prisoners of the land, face an imminent threat of physical assault." *United States v. Tokash*, 282 F.3d 962, 970 (7th Cir. 2002). And the fact that plaintiff had,

apparently, gotten along with Hunt for six months (DE # 25-3 at 3), belies any suggestion that defendants should have been quick to move him.

Plaintiff has simply failed to provide enough specific evidence to raise a genuine issue of material fact regarding defendants' awareness of facts from which they could have inferred that he faced a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837. Accordingly, his "failure to protect" claim cannot proceed, and this court must award summary judgment to defendants.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 24) is **GRANTED**. The clerk is to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendants Kenneth Owns and Thomas Goodlow and against plaintiff Herman Thomas, who shall take nothing by way of his complaint.

**SO ORDERED.**

**DATED:** February 11, 2008

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT